IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LIGHTFORCE ORTHODONTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| CELEBRACE INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff LightForce Orthodontics Inc. ("Plaintiff" or "LightForce") brings this action for patent infringement and unfair and deceptive trade practices against Defendant Celebrace Inc. ("Defendant" or "Celebrace").

## **INTRODUCTION**

1.	This is a civil action for patent infringement and unfair and deceptive trade practices under the laws of the United States, 35 U.S.C. § 1, et seq., and 15 U.S.C. § 1125(a).

2.	Defendant has infringed and continues to infringe one or more claims of U.S. Patent Nos. 12,409,014 ("the '014 patent") and 12,611,287 ("the '287 patent") (collectively, the "Asserted Patents") at least by making, using, selling, offering for sale, and/or importing into the United States orthodontic treatment planning software and related products and services that infringe one or more claims of each of the Asserted Patents.

3.	LightForce is the legal owner by assignment of the entire right, title, and interest in and to the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO").

4.      LightForce seeks monetary damages and injunctive relief to address past and ongoing infringement of its valuable patent portfolio and to remedy Celebrace's unfair and deceptive trade practices, including false and misleading statements made to orthodontists in the marketplace and the deliberate copying of LightForce's marketing, branding, and commercial identity.

## THE PARTIES

5.      Plaintiff LightForce Orthodontics Inc. is a Delaware company, having its principal place of business at 400 Research Drive, Wilmington, MA 01887.

6.      Defendant Celebrace Inc. is a corporation organized under the laws of the State of Delaware, with a place of business at 5708 Colleyville Boulevard, Suite B, Colleyville, Texas 76034.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court also has supplemental jurisdiction over LightForce's state law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the federal claims.

8.      This Court has personal jurisdiction over Celebrace. Celebrace is subject to general personal jurisdiction in the State of Delaware because it is incorporated in the State of Delaware.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Celebrace is incorporated in this District. Upon information and belief, Celebrace has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among

2

other things, making, using, offering to sell, selling, and/or importing products that infringe the Asserted Patents.

**FACTUAL BACKGROUND**

**LightForce's Patented Technologies**

10.    LightForce is a medical technology company and the maker of the world's first fully personalized 3D printed braces system. LightForce was founded by Dr. Alfred Griffin III, a practicing orthodontist who recognized that patients were limited by the inaccuracy and inefficiency of non-custom, one-size-fits-all braces. Dr. Griffin set out to develop what orthodontists needed for decades: a fully personalized, fixed appliance treatment system.

11.    After years of research and development, Dr. Griffin achieved what had once been considered impossible: a 3D-printed bracket made of ceramic polycrystalline alumina. Dr. Griffin then joined forces with Dr. Lou Shuman, a senior executive at Invisalign® during its early stages of hyper-growth and a major thought leader in the dental industry. Together, they grew the LightForce team with key biomechanical engineers, hardware engineers, and software developers who brought a depth of experience in developing advanced dental systems. LightForce received formal FDA clearance in 2019 and officially launched its complete system at the 2019 American Association of Orthodontists ("AAO") Annual Session.

12.    LightForce launched commercial operations in 2020, changing a nearly century-old approach to braces with 3D printing and AI, enabling a new wave of personalization and efficiency for orthodontists. LightForce is the world's largest manufacturer of directly 3D printed functional medical devices by volume. LightForce's 3D printed hardware is custom-made according to a personalized, digital treatment plan. From intraoral support to final prescription, LightForce's software incorporates powerful AI for generating accurate digital representations of patient anatomy and optimal tooth positions for clinical efficiency and aesthetics.





**FULLY CUSTOM BRACES**

Introducing the world's only fully personalized 3D printed bracket.

Features and benefits include a fully personalized base to fit the individual tooth morphology for better bond strength, complete freedom of motion, and much more.

**LIGHTTRAY BY LIGHTFORCE**

LightTrays are patient-specific indirect bonding (IBD) trays designed to create a truly personalized indirect bonding experience for patients and clinical teams.

LightTray empowers your clinical team to quickly and accurately bond each bracket with no doctor time required. The easy-to-edit trays feature identifiable arch segments and are pre-cut to precisely fit the patient's teeth.

LightTray bonding jigs are only available for LightForce braces.

**LIGHTPLAN SOFTWARE**

LightForce's web-based platform enables you to create, adjust, and approve treatment plans quickly and easily.

With complete control over every aspect of the treatment plan, the LightPlan software system empowers clinicians every step of the way.

https://lf.co/.

13.     LightForce's fully integrated system includes LightForce hardware—a full 7-7 fixed appliance system that includes 3D printed fully custom brackets and indirect bonding trays—and LightForce software called LightPlan—a cloud-based, easy-to-use tool for digital treatment planning that enables orthodontists to create, adjust, and approve treatment plans quickly and easily.

14.      Unlike conventional stock braces, each LightForce bracket is custom-created directly from a personalized digital treatment plan, with a fully personalized base designed to fit the individual tooth morphology of each patient.

15.      LightForce also developed LightTrays—patient-specific indirect bonding trays designed to allow clinical teams to quickly and accurately bond each bracket with precision, without requiring direct doctor involvement at every step. Together, LightForce's hardware and

4

software constitute a comprehensive, fully digital system—the only system of its kind in the orthodontic industry.

16.     The clinical results of LightForce's innovations are significant. A peer-reviewed study published in the *Journal of Clinical Orthodontics* found that LightForce cases finished 45% faster with 41% fewer scheduled appointments compared to conventional bracket cases.[1] LightForce's investment in innovation has produced a growing portfolio of patents in the United States directed to its custom bracket system, digital treatment planning platforms, and related orthodontic technologies. LightForce's innovations have been widely recognized by the industry, including being awarded the AAO Innovator Award in 2022.

17.     The LightForce system represents a paradigm shift in orthodontic treatment that was not technologically feasible before the inventions described herein. Prior to LightForce's innovations, orthodontic treatment planning relied on analytical software models that described tooth positions using generalized, patient-independent parameters—models that did not capture the unique three-dimensional morphology of individual patient teeth and therefore could not support the precision required for custom bracket fabrication. The bracket design and treatment planning functions were performed by separate, disconnected workflows, requiring manual translation of treatment goals into bracket prescriptions and significant clinician skill to compensate for the resulting imprecision.

18.     The inventions claimed in the '014 and '287 Patents each solve specific technical problems arising from the need to design and fabricate orthodontic brackets customized to individual patient anatomy with precision sufficient for clinical effectiveness. The '287 Patent addresses these problems at the treatment planning stage; the '014 Patent addresses them at the

---

[1] https://www.jco-online.com/archive/2023/05/274-clinical-efficiency-of-lightforce-3d-printed-custom-brackets/.

bracket design and manufacturing stage. These problems did not exist in prior art systems and could not be solved by the prior art approaches. The claimed solutions are not the application of known techniques to a new field; they are specific technical innovations that required the inventors to develop new computational approaches, new data structures, and new methods of encoding physical manufacturing constraints into digital design workflows. Each patent claims a distinct technical solution developed by different inventors, reflected in separate specifications, that together enable the fully custom bracket fabrication system LightForce has commercialized.

19.     At the time of the inventions claimed in the '014 and '287 Patents, the specific combinations of elements recited in those claims were not well-understood, routine, or conventional in the field of orthodontic treatment planning or bracket design software. This is confirmed by the prior art cited during prosecution, the commercial success of the LightForce system as the first commercially available fully custom ceramic bracket system, and the technical publications describing the state of the art at the time of filing.

**LightForce's Asserted Patents**

20.     This complaint focuses on two LightForce patents directed to various aspects of LightForce's custom orthodontic bracket design system and AI-driven treatment planning platform.

21.     LightForce is the current owner by assignment of the entire right, title, and interest in and to the '014 patent titled "Systems and methods for orthodontic bracket design." The '014 patent was duly and legally issued on September 9, 2025. The patent is generally directed to systems and methods for designing customized orthodontic brackets, including by accessing 3D models of a patient's teeth, positioning bracket models on tooth surfaces, and automatically modifying bracket design parameters in response to changes in bracket position. A copy of the '014 patent is attached as Exhibit A.

22.    The '014 Patent claims a specific computerized system for designing customized labial and lingual orthodontic brackets that solves technical problems arising from the need to simultaneously satisfy multiple geometric and physical constraints imposed by patient-specific dental anatomy, clinical orthodontic prescription requirements, and the capabilities of additive manufacturing processes.

23.    The claimed system is not a generic CAD system applied to dental brackets. It is a specific technical architecture in which a three-dimensional model of a bracket structure is dynamically coupled to a three-dimensional model of a patient's specific tooth surface, such that changes in bracket position on the tooth trigger automatic recomputation, including of the bracket's base surface geometry to maintain conformance with the underlying tooth surface morphology, in/out position and offset, slot angulation, inclination of the slot/base—to ensure the new position satisfies both the patient anatomy as well as the treatment plan. This dynamic geometric coupling was not a feature of prior art dental CAD systems, which used static bracket templates that were manually adjusted to approximate tooth surface contact.

24.    The improvement claimed in the '014 Patent is not an improvement to a business process or to the abstract concept of bracket design. It is an improvement to the specific technical operation of bracket design software—specifically, the implementation of dynamic patient-specific geometric coupling between bracket models, tooth surface models, and prescription plans; and the automatic propagation of positional changes into updated bracket geometry. These improvements apply to and benefit any bracket design workflow regardless of the ultimate fabrication material. These are improvements to how the software itself operates, not merely improvements to what the software is used for.

25.    The specific combination of elements recited in claim 1 of the '014 Patent—

including accessing a three-dimensional model of a patient's specific teeth, positioning a bracket model on a specific tooth surface at a first position, receiving input indicating a change to a second position, and modifying the three-dimensional bracket model based on that change such that the bracket is customized for the second position—was not well-understood, routine, or conventional at the time of filing. Prior art bracket design systems did not implement dynamic repositioning of patient-specific bracket models with automatic updating of bracket geometry based on positional changes on patient-specific tooth surface models. This is a factual matter that LightForce will establish through expert testimony and documentary evidence.

26.     The dependent claims of the '014 Patent add additional specific technical elements that were individually and collectively non-conventional at the time of filing, including, for example: the dynamic recomputation of patient-specific base surface contouring in response to bracket repositioning (claims 3 and 4); the encoding of orthodontic angulation prescription parameters directly into the three-dimensional slot geometry of the bracket model (claims 5 and 6); the encoding of torque prescription parameters as an inclination of both the slot and the base surface simultaneously relative to the tooth surface (claim 7); and the integration of the bracket design system with an additive manufacturing device configured to directly produce the designed bracket (claim 9). Each of these elements improves the technical precision and clinical utility of the bracket design system regardless of the material from which the designed brackets are fabricated.

27.     LightForce is the current owner by assignment of the entire right, title, and interest in and to the '287 patent titled "Techniques for determining patient teeth positions for orthodontics," which was duly and legally issued on April 28, 2026. The '287 patent is generally directed to computer-implemented methods and systems for determining target positions of a

8

patient's teeth for orthodontic treatment planning, including by generating and modifying an arch shape based on feature points of the patient's teeth and repositioning 3D models of the patient's teeth accordingly. A copy of the '287 patent is attached as Exhibit B.

28.     The '287 Patent claims a specific computer-implemented method for determining target positions of a patient's teeth for orthodontic treatment planning. The claimed method solves specific technical problems that arise when a medical professional needs to determine, with the precision required for custom bracket fabrication, the three-dimensional target positions and orientations of patient-specific three-dimensional tooth models relative to a desired arch shape that itself implies a position or shape of an archwire to be used in treatment.

29.     Prior art treatment planning software either used analytical models that generalized tooth positions without representing patient-specific tooth morphology in sufficient detail for custom bracket design, or required medical professionals to manually reposition each three-dimensional tooth model individually—a process that was time-consuming, required high levels of expertise, and produced results whose precision was limited by the manual nature of the process. Neither approach was adequate to support the precision required for fully custom bracket fabrication.

30.     The '287 Patent claims a specific technical solution to these problems: a method in which an arch shape is computationally determined from clinically relevant anatomical feature points on the patient's specific teeth, represented as a mathematical curve whose control points correspond to those anatomical reference points, and in which user modification of the arch shape through adjustment of control points automatically propagates to determine new three-dimensional positions and orientations for each tooth model through specific geometric computations based on the spatial relationship between each tooth's anatomical landmarks and the modified arch curve.

31.     The specific combination of elements recited in claim 1 of the '287 Patent—including determining a first arch shape from feature points identifying clinically relevant locations on the patient's specific teeth, determining control points characterizing that arch shape, receiving user input modifying those control points, determining a second arch shape that represents the shape of an archwire based on the modified control points, and determining three-dimensional positions of patient-specific tooth models based on the second arch shape—was not well-understood, routine, or conventional at the time of filing. Prior art treatment planning software did not implement arch-shape-driven repositioning of patient-specific three-dimensional tooth models using control points derived from patient-specific anatomical feature points. This is a factual matter that LightForce will establish through expert testimony and documentary evidence.

32.     The '287 Patent's claimed method is specifically directed to a technical problem that arises from the combination of two requirements that were not previously addressed in combination: (1) the need to represent the arch shape as a curve whose parameters correspond to the physical positions and dimensions of an archwire that will actually be used in treatment, so that the planned tooth positions are achievable by a real archwire; and (2) the need to determine three-dimensional positions and orientations of patient-specific tooth models relative to that arch curve through specific geometric computations based on patient-specific anatomical reference points. Neither requirement alone, nor the specific method claimed for satisfying both requirements simultaneously, was conventional in the treatment planning software field at the time of filing.

33.     The '287 Patent claims are not directed to the abstract concept of moving teeth on a computer screen or adjusting an arch shape. They are directed to a specific computational architecture in which: the arch shape is generated from and parametrized by clinically identified

anatomical feature points on the patient's own teeth (not a standard arch template); the control points used to modify the arch shape are derived from or correspond to those anatomical feature points; the arch shape is constrained to represent the physical shape of an archwire (not an arbitrary curve); and each tooth model's three-dimensional position and orientation is determined through specific geometric computations relating the tooth's own anatomical landmarks to the arch curve at the point of correspondence.

34.    The dependent claims of the '287 Patent recite additional specific technical elements that further define the non-conventional nature of the claimed method, including: the determination of each tooth's orientation by finding the alignment where a line passing through the tooth's centroid and facial axis point is perpendicular to the arch curve tangent at the intersection point (claims 3 and 19); the determination of each tooth's position by matching the distance from the facial axis point to the arch curve to a clinician-specified in/out distance measured along the centroid-facial axis alignment line (claims 4 and 20); the automatic detection of whether the planned tooth positions would require interproximal reduction based on computed separation distances between adjacent teeth (claim 5); the use of non-uniform rational B-spline curves to represent the arch shape with control points providing local adjustability while maintaining global curve continuity (claims 18 and 19); and the specific set of inter-landmark distances—tube anchor, canine, and central incisor facial axis point distances—that parametrize the arch curve dimensions to correspond to physical archwire dimensions (claims 12 and 13).

35.    Each of the above specific technical elements was non-conventional at the time of filing and represents a specific technical contribution to the field of orthodontic treatment planning software. LightForce will establish the non-conventional nature of these elements through expert testimony and documentary evidence at the appropriate stage of these proceedings.

36. The '287 Patent's claimed method is designed to produce output—three-dimensional tooth model positions determined relative to a physically realizable archwire shape—that is specifically suited to serve as the upstream input for bracket design and custom bracket manufacturing workflows of the kind LightForce has developed and commercialized. The arch shape determined by the '287 method is not merely a planning visualization; it corresponds to the physical position and shape of an archwire that will be manufactured and used in treatment, and the tooth positions it determines are the positions from which custom bracket designs are generated and from which manufacturing parameters for custom brackets are derived. This design reflects the inventor's recognition that treatment planning software operating at sufficient precision to support custom bracket fabrication requires a fundamentally different computational architecture than planning software designed merely to visualize treatment outcomes.

37. The precision of the three-dimensional tooth positions determined by the '287 method directly constrains the dimensional requirements of any orthodontic component subsequently designed and fabricated for those tooth positions. An error in tooth positioning propagates downstream and results in a physical bracket that does not perform as intended clinically. The '287 Patent's specific computational methods for determining tooth positions with sufficient precision to support custom bracket fabrication are therefore not merely convenient software features—they are technical requirements imposed by the physical manufacturing context in which the claimed method operates. The commercial embodiment of the '287 Patent's claimed method—as implemented in LightForce's treatment planning platform—feeds directly into the bracket design and ceramic additive manufacturing system that LightForce has developed, confirming the specifically industrial, manufacturing-oriented purpose of the claimed computational methods.

38.     The claims of the '014 and '287 Patents are not directed to abstract ideas, laws of nature, or natural phenomena. They are directed to specific technical improvements to computer-implemented systems for orthodontic bracket design and treatment planning, and to specific technical solutions to problems that arise in those fields. Each claim recites a specific combination of technical elements that was not well-understood, routine, or conventional at the time of filing, either individually or as a combination. LightForce will establish factual matters through expert testimony and documentary evidence at the appropriate stage of these proceedings.

39.     LightForce notified Celebrace of its potential infringement of the Asserted Patents by letter dated March 6, 2026 (the "Notice Letter"). In the Notice Letter, LightForce identified itself as the owner of a robust portfolio of patents protecting its groundbreaking innovations in custom bracket design, AI-driven digital treatment planning, and advanced ceramic 3D printing manufacturing processes. The Notice Letter specifically identified the '014 Patent and U.S. Patent Application No. 18/082,108—which has since issued as the '287 Patent—as patents and patent applications that Celebrace's products and technologies infringe. In the March 6, 2026 letter, LightForce informed Celebrace that the claims of U.S. Patent Application No. 18/082,108 had been allowed by the USPTO. On information and belief, Celebrace and/or its outside counsel were aware that U.S. Patent Application No. 18/082,108 subsequently issued as the '287 Patent on April 28, 2026. A copy of the Notice Letter is attached as Exhibit C.

40.     LightForce further provided Celebrace with claim charts on April 2, 2026. LightForce further requested that, to the extent Celebrace disagreed with any of LightForce's assertions, Celebrace provide their positions by April 23, 2026. Celebrace never substantively responded. A copy of the April 2, 2026 correspondence and claim charts are attached as Exhibit D.

41.     Despite receiving the Notice Letter and further correspondence evidencing infringement, Celebrace has continued to make, use, sell, offer for sale, and/or import into the United States products and technologies that infringe the Asserted Patents. Accordingly, Celebrace's infringement has been and continues to be willful and deliberate.

**Celebrace's Incorporation of LightForce's Patented Technologies into Its Products**

42.     The allegations provided below are exemplary and without prejudice to LightForce's infringement contentions. In providing these allegations, LightForce does not convey or imply any particular claim constructions or the precise scope of the claims. LightForce's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

43.     Celebrace is a direct competitor to LightForce in this highly specialized market for fully personalized 3D printed braces.

44.     The infringing product includes, but is not limited to, Celebrace's AI-driven, fully-custom metal braces system (the "Accused Product"). The Accused Product integrates artificial intelligence, digital workflows, and indirect bonding solutions, and includes 3D-printed fully custom metal orthodontic brackets, digital bonding trays, and virtual treatment planning software.



https://celebrace.com/.

45.     The Accused Product is a non-limiting example that was identified based on

publicly available information, and LightForce reserves the right to identify additional infringing activities, products and services, including, for example, on the basis of information obtained during discovery.

46.    Celebrace markets and sells the Accused Product to orthodontists in the United States, including through its website at www.celebrace.com and its online case submission portal at hub.celebrace.com. Celebrace describes its workflow as follows: an orthodontist captures a digital scan of a patient's teeth; Celebrace's technology generates a virtual treatment plan for the orthodontist to review and adjust; upon approval, Celebrace fabricates and ships the patient's tailor-made components to the orthodontic practice for application.[2]

47.    As detailed below and in the exemplary Claim Charts attached hereto as Exhibits E and F each element of at least one exemplary claim of each of the Asserted Patents is literally present in the Accused Product, or is literally practiced by Celebrace's personnel, agents or customers—including orthodontists—who use the Accused Product. To the extent that any element is not literally present or practiced, each such element is present or practiced under the doctrine of equivalents.

48.    Celebrace has made extensive use of LightForce's patented technologies, including the technology described and claimed in the Asserted Patents. LightForce is committed to defending its proprietary and patented technology. LightForce requests that this Court award it damages sufficient to compensate for Celebrace's infringement of the Asserted Patents, find this case exceptional and award LightForce its attorneys' fees and costs, and grant an injunction against Celebrace to prevent ongoing infringement of the Asserted Patents.

---

[2] https://celebrace.com/for-doctors/.

**Celebrace's Unfair and Deceptive Trade Practices**

49.    The patent infringement described above does not represent the full extent of Celebrace's unfair and anticompetitive conduct. Separate and distinct from its infringement of LightForce's patents, Celebrace has engaged in a pattern of unfair and deceptive trade practices directed at LightForce's customers, prospective customers, and the orthodontic marketplace as a whole. These practices include making false and misleading statements about the nature, quality, and characteristics of its products as compared to LightForce's, and deliberately copying LightForce's marketing, branding, and commercial identity to trade on the goodwill and reputation that LightForce has built through years of significant investment and innovation.

50.    On information and belief, Celebrace was founded in 2023,[3] more than three years after LightForce launched commercial operations and established itself as the pioneer and market leader in the fully personalized, digital fixed appliance orthodontic treatment space. Rather than innovating independently, Celebrace has sought to ride on LightForce's coattails and trade on LightForce's established reputation and commercial identity by copying LightForce's marketing approach, mimicking LightForce's branding and logo, and making false and misleading statements to orthodontists in the marketplace that Celebrace's products are equivalent to or the same as LightForce's, which has led to confusion in the market.

51.    LightForce has used its logo and commercial branding in connection with its orthodontic products and services since at least 2020 and has had its logo registered with the USPTO since 2022.[4] The following image depicts LightForce's logo as it has appeared in commerce:

---

[3] https://www.linkedin.com/in/mehdi-peikar-777b223b/ (showing Dr. Peikar's, the Founder and CEO of Celebrace, employment at Celebrace beginning in October 2023).
[4] https://tmsearch.uspto.gov/search/search-results/88934529.

16



52.    Celebrace, a later entrant to the market, has adopted a logo and branding that closely mimics LightForce's established commercial identity. The following image depicts Celebrace's logo:



https://celebrace.com/.

53.    The similarity between the two logos is not coincidental. When viewed alongside LightForce's marketing materials, Celebrace's marketing reflects a deliberate effort to copy LightForce's overall commercial presentation and to associate Celebrace's products with LightForce's established brand and reputation in the orthodontic marketplace. The following comparison illustrates this copying:

17

| LightForce Product Packaging | Celebrace Product Packaging |
|---|---|
|  | |

54.     The copying extends beyond logos and visual branding. Celebrace has copied the structure, language, and overall commercial presentation of LightForce's marketing materials. The following table illustrates the pattern of Celebrace's copying of LightForce's marketing and commercial identity across multiple channels:

18

| LightForce's Marketing | Celebrace's Marketing |
|---|---|
| <br><br>LightForce Doctor Brochure (2024) | <br><br>https://celebrace.com/for-doctors/ |
| <br><br>Patient Brochure (2024) | LinkedIn Post (March 23, 2026) |



Instagram Post (April 16, 2025)



LinkedIn (March 2026)



https://www.orthotown.com/magazine/article/9918/from-average-to-individual (April 2026)

20

55.     On information and belief, Celebrace has engaged in a systematic campaign targeting LightForce's existing customers with false and misleading comparative statements. This campaign includes, but is not limited to, the personal solicitation of at least three identified LightForce customers, who were specifically targeted for outreach by Celebrace, on information and belief through LightForce's publicly available Doctor Finder feature, which identifies LightForce's orthodontic customers by name and location. In the course of this targeted solicitation, Celebrace's representatives represented to those customers that Celebrace's products are the metal version of LightForce's products, but available at half the price. Celebrace has represented that its price is approximately half the cost of LightForce's comparable system, falsely implying that the two systems are equivalent in quality, clinical validation, and technical sophistication.

56.     In addition, on information and belief, Celebrace has made false and misleading statements in its marketing materials about its purported connection to LightForce. Specifically, on information and belief, Celebrace has referenced a "colleague from LightForce" in connection with the promotion of its products, falsely implying that its products have been endorsed, validated, or approved by a LightForce affiliate, employee, or clinical partner. On information and belief, the individual referenced as a "colleague from LightForce" purchased two cases of product from LightForce in 2024 as a customer and has never been a LightForce employee, clinical partner, or affiliate. LightForce has not endorsed, approved, or sponsored Celebrace's products in any way. Celebrace's reference to a "colleague from LightForce" in its marketing materials falsely implies a sponsorship, endorsement, or affiliation with LightForce that does not exist.

57.     These statements are false and misleading. LightForce's system is not simply a ceramic version of what Celebrace offers. It is a fundamentally different and superior product

backed by years of research and development, significant capital investment, formal FDA clearance, peer-reviewed clinical validation, and a growing portfolio of patents. Specifically:

- LightForce received formal FDA clearance in 2019 following rigorous regulatory review (and years before Celebrace received FDA approval in December 2025).[5]

- A peer-reviewed study published in the Journal of Clinical Orthodontics demonstrated that LightForce cases finish 45% faster with 41% fewer appointments than conventional bracket cases.[6]   On information and belief, Celebrace has no comparable clinical validation.

- LightForce has been awarded the AAO Innovator Award in 2022, recognizing its clinical and technological contributions to the orthodontic field.[7]

- LightForce has invested over $150 million in research, development, and commercialization of its system.[8] There is no indication that Celebrace has made comparable investments in research or clinical validation.

- LightForce holds a robust and growing portfolio of United States patents covering its custom bracket design, treatment planning platform, and manufacturing processes. Celebrace's system infringes those patents, as described in this Complaint, and Celebrace has no comparable proprietary technology of its own.

58.      Celebrace's representation that its products are equivalent to or the same as LightForce's—differing only in material and price—is therefore false and misleading. It

---

[5] https://lightforceorthodontics.com/sp/about-us.
[6]   https://www.jco-online.com/archive/2023/05/274-clinical-efficiency-of-lightforce-3d-printed-custom-brackets/.
[7] https://lightforceorthodontics.com/sp/about-us; https://www2.aaoinfo.org/2022-aao-ortho-innovator-award-goes-to-lightforce/.
[8]   https://news.crunchbase.com/health-wellness-biotech/orthodontics-venture-funding-lightforce/; https://www.youtube.com/watch?v=FS7krOp4Gis

misrepresents the standard, quality, grade, and characteristics of Celebrace's products, falsely suggesting a level of clinical validation, regulatory approval, and technological sophistication that Celebrace's products do not have.

59.    On information and belief, the pattern of deceptive conduct described above is not limited to Celebrace's marketplace statements and marketing materials. It extends to the conduct of Celebrace's founder and CEO, Dr. Mehdi Peikar, during the period in which he was developing the Accused Product. In a video posted publicly on January 20, 2026, in connection with an industry Innovator Award competition, Dr. Peikar stated: "We have spent the past two years building Celebrace and have treated hundreds of patients." This statement places the start of Celebrace's development at approximately January 2024. During that same period, Dr. Peikar registered for, attended, or viewed multiple LightForce events, including a LightForce study club in May 2024 and additional LightForce educational and customer events going back more than two years.  For example, Dr. Peikar attended or virtually viewed at least four LightForce events between February 2024 and August 2025.

60.    On information and belief, Dr. Peikar attended these LightForce events not as a genuine prospective customer or clinical partner, but as the CEO of a competing company in development, seeking to gather information about LightForce's technology, products, and business practices to inform the development of Celebrace's competing system. On information and belief, Dr. Peikar concealed his identity[9] and competitive intent when attending these events, registering under circumstances that did not disclose his role as the founder and CEO of a direct competitor to LightForce. The deliberate concealment of his competitive intent allowed Peikar to attend LightForce events designed for customers and clinical partners under false pretenses and to

---

[9] In at least one instance, Dr. Peikar registered for a LightForce event under the company name "Fusion Orthodontics."

misappropriate the educational and clinical content of those events for Celebrace's commercial benefit.

61.    On information and belief, Dr. Peikar also caused LightForce products to be ordered and delivered to Fusion Orthodontics in 2024, during the same period in which he was developing Celebrace's competing system. On information and belief, these products were obtained not for legitimate clinical use but to study LightForce's proprietary bracket design, manufacturing process, and clinical system in connection with the development of Celebrace's competing product. The physical brackets contained in those orders embody LightForce's patented technology, including the technology described and claimed in the Asserted Patents.

62.    Celebrace's unfair and deceptive trade practices are distinct from, and in addition to, its infringement of LightForce's patents. The conduct described in this section is grounded in Celebrace's deceptive marketing, false comparative statements, and deliberate copying of LightForce's commercial identity—not in the manufacture or sale of infringing products—and is independently actionable under the statutes identified below. Certain of Celebrace's unfair and deceptive trade practices nevertheless support copying of LightForce's technology, further supporting willful and deliberate patent infringement.

**COUNT I**

**(Infringement of U.S. Patent No. 12,409,014)**

63.    LightForce incorporates by reference and realleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

**Celebrace's Direct Infringement**

64.    Celebrace has directly infringed and continues to directly infringe, literally and/or equivalently, one or more claims of the '014 patent, including at least claim 1, by making, using, selling, offering for sale, and/or importing into the United States the Accused Product.

65.     As set forth in the exemplary Claim Chart attached hereto as Exhibit E, the Accused Product meets each and every limitation of at least exemplary claim 1 of the '014 patent, either literally or under the doctrine of equivalents. Specifically, Celebrace's treatment planning software comprises at least one processor and computer-readable storage medium storing instructions that cause the processor to perform: accessing a 3D model of a patient's teeth; accessing a 3D model of a labial/lingual bracket structure indicating a design of a customized labial/lingual orthodontic bracket comprising a base, a body, and a slot; positioning the 3D model of the labial/lingual bracket structure on a surface of a tooth at a first position in the 3D model of the patient's teeth, wherein the customized labial/lingual orthodontic bracket is customized for the first position; receiving an input indicating a change in the first position of the 3D model of the labial/lingual bracket structure on the surface of the tooth at a second position that is different from the first position; and in response to that input, modifying the 3D model of the labial/lingual bracket structure based on the change in position, wherein the customized labial/lingual orthodontic bracket is customized for the second position, all as claimed in the '014 patent.

## Celebrace's Knowledge of the '014 Patent

66.     Celebrace has had actual knowledge of the '014 patent at least since March 6, 2026, when LightForce sent the Notice Letter to Celebrace identifying the '014 patent and notifying Celebrace that its products and activities potentially infringe LightForce's patent rights, including those covered by the '014 patent.

## Celebrace's Willful Infringement

67.     Celebrace has willfully infringed at least claim 1 of the '014 patent.

68.     As described above, Celebrace received actual notice of the '014 patent no later than March 6, 2026, through the Notice Letter. LightForce further provided Celebrace with claim charts on April 2, 2026. LightForce further requested that, to the extent Celebrace disagreed with any

25

of LightForce's assertions, Celebrace provide their positions by April 23. Celebrace never substantively responded.

69.    Despite receiving the Notice Letter and further correspondence evidencing infringement, Celebrace has continued to make, use, sell, offer for sale, and/or import the Accused Product into the United States.[10] Celebrace's continued infringement in the face of actual knowledge of the '014 Patent demonstrates that its infringement is willful, wanton, and in conscious disregard of LightForce's rights, entitling LightForce to enhanced damages pursuant to 35 U.S.C. § 284.

70.    On information and belief, Celebrace's founder and CEO attended multiple LightForce educational and customer events during the period in which he was developing the Accused Product and caused LightForce products to be obtained during that same period, giving him detailed knowledge of LightForce's patented technology. On information and belief, this knowledge directly informed the development of the Accused Product. Celebrace's infringement of the Asserted Patents is therefore not the result of independent development but of deliberate study and misappropriation of LightForce's patented technology, further evidencing the willful and deliberate nature of Celebrace's infringement.

### Celebrace's Induced Infringement

71.    Since at least March 6, 2026, Celebrace has known that the Accused Product infringes one or more claims of the '014 patent when used by orthodontists and other customers who access and operate Celebrace's treatment planning software.

72.    Celebrace has induced infringement and continues to induce infringement of the '014 patent.

---

[10] *See, e.g.*, https://celebrace.com/for-doctors/; https://celebrace.com/for-patients/.

73.    Celebrace provides orthodontists with access to its treatment planning software through its online portal at hub.celebrace.com, and provides, on information and belief, instructions, training materials, and other resources that encourage orthodontists to use the Accused Product in an infringing manner.

74.    For example, on its website (https://celebrace.com/for-doctors), Celebrace instructs orthodontists to "capture a digital scan of your patient's teeth using your preferred scanner" from which "Celebrace technology generates a virtual treatment plan."

75.    On information and belief, Celebrace knows that such use by orthodontists constitutes infringement of the '014 patent, or has been willfully blind to that fact.

### Celebrace's Contributory Infringement

76.    Since at least March 6, 2026, Celebrace has contributorily infringed and continues to contributorily infringe one or more claims of the '014 patent by selling, offering to sell, and/or importing into the United States the Accused Product or components thereof, which constitute a material part of the inventions claimed in the '014 patent, knowing that the Accused Product is especially made or especially adapted for use in infringement of the '014 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

77.    The foregoing description of Celebrace's infringement is based on publicly available information. LightForce reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

78.    Celebrace is a direct competitor to LightForce in this highly specialized market for fully personalized 3D printed braces. Celebrace's infringement erodes LightForce's market share and competitive position in ways that cannot be fully compensated by money damages. LightForce faces loss of customers, contracts, and business relationships that are difficult or impossible to quantify. Further, due to the inferior quality of Celebrace's Accused Products,

27

LightForce's reputation and goodwill in the market have suffered and will continue to suffer; and customers may associate problems with Accused Products with LightForce's technology or brand. Accordingly, LightForce has been and is being irreparably harmed, and has incurred and will continue to incur damages, as a result of Celebrace's infringement of the '014 patent.

79.    Celebrace's infringement of the '014 patent has damaged and continues to damage LightForce in an amount yet to be determined, of no less than a reasonable royalty.

## COUNT II

### (Infringement of U.S. Patent No. 12,611,287)

80.    LightForce incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

### Celebrace's Direct Infringement

81.    Celebrace has directly infringed and continues to directly infringe, literally and/or equivalently, one or more claims of the '287 patent, including at least claim 1, by making, using, selling, offering for sale, and/or importing into the United States the Accused Product.

82.    As set forth in the exemplary Claim Chart attached hereto as Exhibit F, the Accused Product meets each and every limitation of at least exemplary claim 1 of the '287 patent, either literally or under the doctrine of equivalents. Specifically, Celebrace's treatment planning software determines an arch shape for a patient's teeth based on feature points that each identifies a location with respect to one of the plurality of teeth; determines control points characterizing that arch shape; receives user input indicating changes to the positions of one or more control points, thereby defining a modified plurality of control points; determines a second arch shape based on the modified control points; and determines positions for 3D models of the patient's teeth based on the second arch shape, all as claimed in the '287 patent.

**Celebrace's Knowledge of the '287 Patent**

83.    Celebrace has had actual knowledge of the '287 Patent at least since March 6, 2026, when LightForce sent the Notice Letter to Celebrace identifying U.S. Patent Application No. 18/082,108; indicating that the claims of which, at that time, had been allowed by the USPTO; and notifying Celebrace that its products and activities potentially infringe LightForce's patent rights, including those covered by the '287 Patent. The '287 Patent issued on April 28, 2026 with the same claims that were earlier allowed, subject to correction of two non-substantive typos post-allowance. On information and belief, Celebrace and/or its outside counsel were aware that U.S. Patent Application No. 18/082,108 subsequently issued as the '287 Patent on April 28, 2026.

**Celebrace's Willful Infringement**

84.    Celebrace has willfully infringed at least claim 1 of the '287 patent.

85.    As described above, Celebrace received actual notice of the '287 patent no later than March 6, 2026, through the Notice Letter, which specifically identified U.S. Patent Application No. 18/082,108 by number and described the subject matter it covers, and indicating that the claims of which, at that time, had been allowed by the USPTO.  The '287 Patent issued on April 28, 2026 with the same claims that were earlier allowed, subject to correction of two non-substantive typos post-allowance.

86.    Despite receiving the Notice Letter and further correspondence evidencing infringement, Celebrace has continued to make, use, sell, offer for sale, and/or import into the United States the Accused Product without obtaining a license or taking any steps to design around LightForce's patent rights.[11]  Celebrace's continued infringement demonstrates that its

---

[11] *See, e.g.*, https://celebrace.com/for-doctors/; https://celebrace.com/for-patients/.

29

infringement is willful, wanton, and in conscious disregard of LightForce's rights, entitling LightForce to enhanced damages pursuant to 35 U.S.C. § 284.

87.    On information and belief, Celebrace's founder and CEO attended multiple LightForce educational and customer events during the period in which he was developing the Accused Product and caused Light Force products to be obtained during that same period, giving him detailed knowledge of LightForce's patented technology. On information and belief, this knowledge directly informed the development of the Accused Product. Celebrace's infringement of the Asserted Patents is therefore not the result of independent development but of deliberate study and misappropriation of LightForce's patented technology, further evidencing the willful and deliberate nature of Celebrace's infringement.

### Celebrace's Induced Infringement

88.    Since at least March 6, 2026, Celebrace has known that the Accused Product infringes one or more claims of the '287 patent when used by orthodontists and other customers who access and operate Celebrace's treatment planning software.

89.    Celebrace has induced infringement and continues to induce infringement of the '287 patent by actively encouraging orthodontists and other customers to use the Accused Product in a manner that directly infringes one or more claims of the '287 patent.

90.    Celebrace provides orthodontists with access to its treatment planning software through its online portal at hub.celebrace.com, and provides, on information and belief, instructions, training materials, and other resources that encourage orthodontists to use the Accused Product in an infringing manner.

91.    For example, on its website (https://celebrace.com/for-doctors), Celebrace instructs orthodontists to "capture a digital scan of your patient's teeth using your preferred scanner" from which "Celebrace technology generates a virtual treatment plan."

30

92.     On information and belief, Celebrace knows that such use by orthodontists constitutes infringement of the '287 patent, or has been willfully blind to that fact.

**Celebrace's Contributory Infringement**

93.     Since at least March 6, 2026, Celebrace has contributorily infringed and continues to contributorily infringe one or more claims of the '287 patent by selling, offering to sell, and/or importing into the United States the Accused Product or components thereof, which constitute a material part of the inventions claimed in the '287 patent, knowing that the Accused Product is especially made or especially adapted for use in infringement of the '287 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

94.     The foregoing description of Celebrace's infringement is based on publicly available information. LightForce reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

95.     Celebrace is a direct competitor to LightForce in this highly specialized market for fully personalized 3D printed braces. Celebrace's infringement erodes LightForce's market share and competitive position in ways that cannot be fully compensated by money damages. LightForce faces loss of customers, contracts, and business relationships that are difficult or impossible to quantify. Further, due to the inferior quality of Celebrace's Accused Products, LightForce's reputation and goodwill in the market have suffered and will continue to suffer; and customers may associate problems with Accused Products with LightForce's technology or brand. Accordingly, LightForce has been and is being irreparably harmed, and has incurred and will continue to incur damages, as a result of Celebrace's infringement of the '287 patent.

96.     Celebrace's infringement of the '287 patent has damaged and continues to damage LightForce in an amount yet to be determined, of no less than a reasonable royalty.

31

## COUNT III

### (Violation of Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 and Delaware Common Law)

97.    LightForce incorporates by reference and realleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

98.    Celebrace has engaged and continues to engage in deceptive trade practices in violation of 6 Del. C. § 2532 and Delaware common law in the course of its business and in competition with LightForce. Celebrace's deceptive trade practices are distinct from and independent of its infringement of LightForce's Asserted Patents and are based on Celebrace's false and misleading marketing statements, its misrepresentation of the standard and quality of its products, and its deliberate copying of LightForce's commercial identity.

99.    Celebrace has represented that its products have sponsorship, approval, and certification that they do not have, in violation of 6 Del. C. § 2532(a)(5) and Delaware common law, by referencing a "colleague from LightForce" in its marketing materials in a manner that falsely implies the endorsement, sponsorship, or approval of LightForce. On information and belief, the individual referenced as a "colleague from LightForce" is a former LightForce customer with no employment, clinical, or affiliate relationship with LightForce, and LightForce has not endorsed, approved, or sponsored Celebrace's products in any way.

100.    Celebrace has represented and continues to represent that its products are of the same standard, quality, and grade as LightForce's products, in violation of 6 Del. C. § 2532(a)(7) and Delaware common law. Specifically, on information and belief, Celebrace has represented to orthodontists in the marketplace that its products are equivalent to LightForce's products, describing them as the metal version of LightForce's system but available at half the price, when in fact Celebrace's products are not of the same standard, quality, or grade as LightForce's.

LightForce's system has received formal FDA clearance, has been validated by peer-reviewed clinical studies, and is backed by significant research and development investment and a robust patent portfolio.

101. Celebrace has engaged and continues to engage in other conduct which similarly creates a likelihood of confusion or misunderstanding, in violation of 6 Del. C. § 2532(a)(12) and Delaware common law, by deliberately copying LightForce's logo, marketing materials, advertising content, and overall commercial presentation in a manner that creates the likelihood that orthodontists will assume an affiliation, association, or connection between Celebrace and LightForce that does not exist. As illustrated in the comparison above, Celebrace's logo and marketing materials closely mirror those of LightForce, which has used its commercial branding in the orthodontic marketplace since at least 2020. This deliberate copying creates a likelihood of confusion as to the source, affiliation, and association of Celebrace's products and is a per se deceptive trade practice under 6 Del. C. § 2532(a)(12).

102. Celebrace's deceptive trade practices constitute a pattern of ongoing deceptive conduct directed at LightForce's existing and prospective customers in the orthodontic marketplace, including through Celebrace's website at www.celebrace.com, its social media channels, its participation in industry conferences and trade shows, and its direct outreach to orthodontists. This conduct is ongoing and creates a reasonable apprehension of future deceptive acts absent injunctive relief.

103. LightForce is likely to be damaged by Celebrace's deceptive trade practices and is entitled to injunctive relief pursuant to 6 Del. C. § 2533(a).

104. On information and belief, Celebrace's deceptive trade practices have been willful. Celebrace knew or should have known that its conduct, including its false comparative

33

statements and deliberate copying of LightForce's commercial identity, was the nature prohibited by the Delaware Deceptive Trade Practices Act. LightForce is therefore entitled to an award of its attorneys' fees and costs pursuant to 6 Del. C. § 2533(b).

105.    Celebrace's deceptive trade practices have damaged and continue to damage LightForce in an amount yet to be determined, and LightForce is entitled to treble damages pursuant to 6 Del. C. § 2533(c).

**COUNT IV**

**(False Advertising – 15 U.S.C. § 1125(a)(1)(B))**

106.    LightForce incorporates by reference and realleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

107.    Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits any person from using in commerce any false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of that person's or another person's goods, services, or commercial activities.

108.    Celebrace has made and continues to make false and misleading statements of fact in commercial advertising and promotion that misrepresent the nature, characteristics, and qualities of Celebrace's products as compared to LightForce's products. These statements include but are not limited to:

- (i) Celebrace's direct solicitation of at least three LightForce customers, in which Celebrace's representatives represented that Celebrace's products are the metal version of LightForce's products but available at half the price, implying equivalence in quality and clinical performance that does not exist;

- (ii) Celebrace's reference in its marketing materials to a colleague from LightForce in connection with the promotion of its products, falsely implying that its products have been endorsed, validated, or approved by a LightForce affiliate, employee, or clinical partner, when on information and belief the individual referenced had no relationship with LightForce beyond purchasing two cases as a customer in 2024;

- (iii) On information and belief, Celebrace's presentation in its marketing webinar of clinical cases as examples of outcomes achieved using Celebrace's system, when those cases were on information and belief treated using LightForce's system and do not reflect the capabilities or clinical outcomes of Celebrace's products; and

- (iv) On information and belief, additional false and misleading statements made in the course of Celebrace's ongoing targeted solicitation of LightForce's customers, the full extent of which LightForce expects to discover through the course of this litigation.

109. These statements are false and misleading. As described above, LightForce's system and Celebrace's system are not equivalent in nature, characteristics, or quality. LightForce's system has received FDA clearance, has been validated by peer-reviewed clinical studies demonstrating 45% faster treatment with 41% fewer appointments, has won the AAO Innovator Award, and is backed by over $150 million in research and development investment and a robust patent portfolio. Representing Celebrace's products as equivalent to LightForce's, differing only in material and price, is therefore a false and misleading statement of fact about the nature, characteristics, and qualities of Celebrace's products.

110. Celebrace's false and misleading statements have actually deceived, or have the capacity to deceive, a substantial segment of their intended audience. Orthodontists making significant investment decisions about which treatment system to adopt for their practices are

directly targeted by Celebrace's marketing, and comparative statements about product equivalence and price are inherently material to those purchasing decisions.

111. The deception is material in that it is likely to influence the purchasing decisions of orthodontists deciding between LightForce's and Celebrace's systems. An orthodontist who believes the two systems are equivalent in quality and clinical performance, but that Celebrace's system is available at half the price would be influenced by that belief in making a purchasing decision.

112. Celebrace has caused its false and misleading statements to enter interstate commerce through its website at www.celebrace.com, its social media channels, its participation in industry conferences and trade shows, and its direct outreach to orthodontists across the United States. On information and belief, Celebrace identified these LightForce customers for targeted solicitation through LightForce's publicly available Doctor Finder feature.

113. LightForce has been and continues to be injured by Celebrace's false advertising. LightForce has suffered and continues to suffer competitive harm in the form of lost customers, diverted sales, and reputational injury as a direct result of Celebrace's false and misleading comparative statements. On information and belief, orthodontists who would otherwise have adopted LightForce's system have been diverted to Celebrace's system based on false representations of product equivalence.

114. LightForce is entitled to recover Celebrace's profits, LightForce's damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a). In exceptional cases, LightForce is also entitled to attorneys' fees.

115.    LightForce is further entitled to injunctive relief pursuant to 15 U.S.C. § 1116, enjoining Celebrace from continuing to make false and misleading comparative statements about LightForce's and Celebrace's products in commercial advertising and promotion.

**<u>REQUEST FOR RELIEF</u>**

WHEREFORE, Plaintiff LightForce respectfully requests that this Court enter judgment as follows:

a.    Declaring that Celebrace has infringed the '014 patent and the '287 patent;

b.    Granting a permanent injunction, enjoining Celebrace and its officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from further infringement of the '014 patent and the '287 patent, including but not limited to enjoining the manufacture, sale, offer for sale, importation or use of the Accused Products and any further development of the Accused Products;

c.    Granting a permanent injunction, enjoining Celebrace and its officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from further engaging in unfair and deceptive trade practices, including but not limited to making false or misleading comparative statements about LightForce's or Celebrace's products in commercial advertising or promotion, and using logos, marketing materials, or branding that mimics LightForce's commercial identity in a manner that creates a likelihood of confusion or misunderstanding;

d.    Awarding LightForce damages adequate to compensate it for Celebrace's infringing activities, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, together with pre-judgment and post-judgment interest on the damages awarded;

e.   Finding Celebrace's infringement to be willful and awarding enhanced damages in an amount up to treble the amount of compensatory damages as justified under 35 U.S.C. § 284;

f.   Finding this to be an exceptional case and awarding LightForce its attorneys' fees and costs under 35 U.S.C. § 285 as a result of Celebrace's willful infringement of the Asserted Patents;

g.   Awarding LightForce Celebrace's profits and LightForce's damages arising from Celebrace's false advertising in violation of 15 U.S.C. § 1125(a)(1)(B);

h.   Awarding LightForce treble damages arising from Celebrace's willful violation of the Delaware Deceptive Trade Practices Act and Delaware common law pursuant to 6 Del. C. § 2533(c);

i.   Finding this to be an exceptional case and awarding LightForce its attorneys' fees and costs under 15 U.S.C. § 1117(a) and 6 Del. C. § 2533(b) as a result of Celebrace's willful false advertising and willful deceptive trade practices; and

j.   Awarding LightForce any such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

LightForce hereby demands a trial by jury on all issues so triable.


/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
*Attorneys for Plaintiff LightForce Orthodontics Inc.*

OF COUNSEL:
Gregory F. Corbett
Bryan S. Conley
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000

Cassandra Baloga
WOLF, GREENFIELD & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, NY 10158
(212) 697-7890

Dated: May 4, 2026